JU[illegible] BRIEANT

ORIGINAL

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: JOSEPH N. CORDARO
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2745
Facsimile: (212) 637-2686
Email: joseph.cordaro@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ESTATE OF MARILYN A. CALANGELO, SULLIVAN COUNTY DEPARTMENT OF FAMILY SERVICES, CATSKILL REGIONAL MEDICAL CENTER, JOHN DOES NOS. 1-10 and JANE DOES NOS. 1-10,<br><br>Defendants. | ECF CASE<br><br>COMPLAINT<br><br>08 Civ. ____ |

U.S. D[illegible] COURT FILED 2008 APR 23 [illegible] 11:12

Plaintiff, United States of America ("the United States" or "the Government"), by and through its attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, for its complaint herein alleges upon information and belief as follows:

INTRODUCTION

1. This is an action brought by the United States to foreclose a mortgage on property located in the Hamlet of

Livingston Manor, Town of Rockland, County of Sullivan and State of New York, within the Southern District of New York.

JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b), in that the property is located within the Southern District of New York.

THE PARTIES

4. The Rural Housing Service ("RHS") is an agency of the United States.

5. The Estate of Marilyn A. Calangelo ("the Estate of Calangelo") is the successor in interest to Marilyn A. Calangelo ("Borrower") who, prior to her death, resided at 19 Maiden Lane, Livingston Manor, New York (the "premises" or the "Mortgaged Property").

6. Defendant Sullivan County Department of Family Services is named as a defendant herein because it filed a claim against the Estate of Marilyn A. Calangelo in Sullivan County Court, File No. 2006-166.

7. Defendant Catskill Regional Medical Center is named as a defendant herein because it is mentioned in the application for letters testamentary as having a claim against the Estate of Marilyn A. Calangelo.

are immediately due and payable by Borrower to the Government, without demand, and are secured by the Mortgage.

12. On February 2, 1989, RHS and Borrower entered into a Subsidy Repayment Agreement (the "Subsidy Repayment Agreement"). Pursuant to 42 U.S.C. § 1490a and the terms of the Mortgage, any interest credit assistance is subject to recapture upon disposition of the property. The amount subject to recapture is $41,393.32. A true and correct copy of the Subsidy Repayment Agreement is attached hereto as Exhibit C. A true and correct copy of the USDA Payoff Funds Pop-Up computer screen for Borrower's account, reflecting the amount subject to recapture, is attached hereto as Exhibit D.

13. On or about October 1, 2007, a notice of default and demand letter was sent to the Estate of Marilyn A. Calangelo. In that letter, RHS advised the Estate of Marilyn A. Calangelo that due to the continued failure to make the required mortgage payments, and in accordance with the terms of the Mortgage and Note, the indebtedness due on the Note was accelerated and deemed to be immediately due and payable. A true and correct copy of the October 1, 2007 letter is annexed hereto as Exhibit E.

14. By letter dated March 10, 2008, which was sent by certified mail, return receipt requested, and by first class mail, the United States informed Anthony Calangelo as executor of the Estate of Marilyn Calangelo that the Estate of Marilyn A.



USDA-FmHA
Form FmHA 1940-16
(Rev. 8/87)

# PROMISSORY NOTE

| TYPE OF LOAN |
|---|
| SECTION 502 RH |

| STATE NEW YORK |
|---|
| COUNTY SULLIVAN |
| CASE NO |

Date FEBRUARY 2, 19 89.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in LIBERTY, NEW YORK 12754,

THE PRINCIPAL SUM OF FORTY SIX THOUSAND AND 00/100------------------------------

DOLLARS ($ 46,000.00), plus INTEREST on the UNPAID PRINCIPAL of NINE AND ONE HALF PERCENT ( 9.5 %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

[X] I. Principal and Interest payments shall be deferred. The interest accrued to MAY 2, 19 89 shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in 393 regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $ 46,095.09 and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______ of each ______ beginning on ______, 19___, through ______, 19___, Principal and later accrued Interest shall be paid in ______ installments as indicated in the box below;

☐ III. Payments shall not be deferred. Principal and Interest shall be paid in ______ installments as indicated in the box below:

$ 383.00 on JUNE 2, 19 89, and

$ 383.00 thereafter on the 2ND of each MONTH until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and PAYABLE THIRTY THREE ( 33 ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

Marilyn A. Calangelo (SEAL)
MARILYN A. CALANGELO (BORROWER)

(SEAL)
(SPOUSE)

MAIDEN LANE
LIVINGSTON MANOR, N.Y. 12758

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $39,000.00 | 2-2-89 | (8) $ | | (15) $ | |
| (2) $ 7,000.00 | 5-2-89 | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 46,000.00 | |

★ U.S. Government Printing Office: 1987—723-431/81818



Position 5

USDA-FmHA
Form FmHA 427-1 NY
(Rev. 6-85)

# REAL ESTATE MORTGAGE FOR NEW YORK

THIS MORTGAGE, is made and entered into by MARILYN A. CALANGELO CF 3312

residing in Sullivan County, whose post office address

is Livingston Manor, New York 12758

herein called "Borrower", and the United States of America, acting through Farmers Home Administration, United States Department of Agriculture, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note", which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| Feb. 2, 1989 | $46,000.00 | 9.5% | Feb. 2, 2022 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased after 3 years, as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 as amended, or any other statute administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

And the debt instruments executed at the time of loan closing constitutes an obligation on the part of the Government to disburse all funds at one time or in multiple advances, provided the funds are for purposes authorized by the Government at the time of loan closing. This obligatory commitment takes priority over any intervening liens or advances by other creditors regardless of the provisions of the State laws involved:

NOW, THEREFORE, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower hereby grants, bargains, sells, conveys, assigns, mortgages, and forever warrants unto the Government the following property, herein called "the Property" situated in the County of Sullivan, State of New York.

Received of the mortgage named in the within instrument $............., being the amount of the tax imposed thereon and paid at the time of the recording thereof.
Special additional tax

$..................

Dated: FEB 0 9 1989

..............[illegible]..........
Recording Officer of Sull. Co.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

MAGNETIC NORTH
POINT OF BEGINNING
FORMERLY LANDS OF NEWMAN
IRON PIN
S. 56°-12' E 208.72'
TO ROCK AVENUE
TRAVELED WAY OF MAIDEN LANE
N. 37°-17' E
153.16'
HIGHWAY BOUNDS
UTILITY LINES
0.70 ACRE PARCEL
UTILITY LINES
SHED
S. 32°-37' W 105.00'
HOUSE
GARAGE
ROOF LINE IS ON PROPERTY LINE
DRIVEWAY
N. 56°-12' W. 177.20'
IRON PIN
GALANA TO BRESSLER
FORMERLY LANDS OF SCHWARTZ
MOCZYDLOWSKA
PANAIOTOV
TRAVELED WAY OF PEARL STREET
TO MAIN STREET
SURVEY MAP OF
LIVINGST
SCALE: 1"=30'

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and the default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, and (c) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, with interest to the date of sale, (d) inferior liens of record required by law to be so paid or duly approved and allowed by court order or otherwise, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(21) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Syracuse, New York 13210, and in the case of Borrower to the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

AND THAT, except to any extent that such construction conflicts with express provisions of this mortgage:

(23) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(24) This mortgage is also intended to be a financing statement within the meaning of Article 9 of the Uniform Commercial Code covering fixtures attached to the above-described real estate, now owned or hereafter required; and crops growing or to be grown on the above-described real estate.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this __________ day of February 2, 19 89

In the presence of

__________ [signature] (SEAL)
Marilyn A. Calangelo

__________ __________ (SEAL)

ACKNOWLEDGMENT

STATE ~~OR TERRITORY~~ OF New York } ss:
COUNTY OF Sullivan

On the 2nd day of February, 19 89, before me, came

Marilyn A. Calangelo

to me known to be the individual(s) described in, and who executed the foregoing instrument, and acknowledged to me that she executed the same for the purposes therein contained.

[signature]
*Notary Public.*

(SEAL)

My commission expires July 31, 1989

JACOB J. EPSTEIN
Notary Public, State of New York
Sullivan County Clerk's #341
Commission Expires July 31, 1989

RECORD ENTERED 2-9-89 AT 4:19 P.M. JOE PURCELL, CLERK

RECEIVED
1989 FEB -9 PM 4:19
SULLIVAN COUNTY CLERK

STATE OF NEW YORK
SULLIVAN COUNTY ss:
RECORDED ON THE 9 DAY
Feb. 19 89 AT 4:19
P. M. IN LIBER 1403
Mtgs. AT PAGE 570
EXAMINED

CF 3312

MARILYN A. CALANGELO
Mortgagor

and

U.S.A. acting through
Farmers Home Administration
USDA
Mortgagee

17
xt

JACOB J. EPSTEIN
ATTORNEY AND COUNSELOR AT LAW
P. O. DRAWER 477
MAIN STREET
JEFFERSONVILLE, NEW YORK 12748
TELEPHONE:
AREA CODE 914-482-5200



FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Date of Note 2/2/89 Amount of Note $46,000.00 Date of mortgage 2/2/89

Date of Note ____ Amount of Note ____ Date of mortgage ____________

Type of assistance:

1. Interest credit /XX/
2. Homeownership Assistance Program /__/

Address of Property: Maiden Lane

Livingston Manor, N.Y. 12758

BORROWER: MARILYN A. CALANGELO

CO-BORROWER: --------------------

1 This agreement entered into pursuant to 7 CFR 1951-I, between the United States of America, acting through the Farmers Home Administration (FmHA) (herein called "the Government") pursuant to section 521 of Title V of the Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears above (herein sometimes referred to as "borrower"), supplements the note(s) from borrower to the Government as described above, and any promissory note(s) for loans made to borrower in the future by the Government. Such future notes, when executed, will be listed below the signature line of this Subsidy Repayment Agreement.

2 I (we) agree to the conditions set forth in this agreement for the repayment of the subsidy granted me (us) in the form of interest credits or Homeownership Assistance Program (HOAP) subsidy (hereinafter called "subsidy").

3 I (we) agree that the real property described in the mortgage(s) listed above is pledged as security for repayment of the subsidy received or to be received. I (we) agree that the subsidy is due and payable upon the transfer of title or non-occupancy of the property by me (us). I (we) understand that the real estate securing the loan(s) is the only security for the subsidy received. I (we) further understand that I (we) will not be required to repay any of the subsidy from other than the value (as determined by the Government) of the real estate, mortgaged by myself (ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

4 I (we) understand that so long as I (we) continue to own the property and occupy the dwelling as my (our) residence, I (we) may repay the principal and interest owed on the loan and defer repaying the subsidy amount until title to the property is conveyed or the dwelling is no longer occupied by me (us). If such a request is made, the amount of subsidy to be repaid will be determined when the principal and interest balance is paid. The mortgage securing the FmHA RH loan(s) will not be released of record until the total amount owed the Government has been repaid.

5 I (we) agree that Paragraph 6 of this agreement is null and void should the property described in the mortgage(s) be voluntarily conveyed to the Government or liquidated by foreclosure.

6 When the debt is satisfied by other than voluntary conveyance of the property to the Government or by foreclosure, I (we) agree that sale proceeds will be divided between the Government and me (us) in the following order:

(a) Unpaid balance of loans secured by a prior mortgage as well as real estate taxes and assessments levied against the property which are due will be paid.

(b) Unpaid principal and interest owed on FmHA RH loans for the property and advances made by FmHA which were not subsidy and are still due and payable will be paid to the Government.

(c) I (we) will receive from the sale proceeds actual expenses incurred by me (us) necessary to sell the property. These may include sales commissions or advertising cost, appraisal fees, legal and related costs such as deed preparation and transfer taxes. Expenses incurred by me (us) in preparing the property for sale are not allowed unless authorized by the Government prior to incurring such expenses. Such expenses will be authorized only when FmHA determines such expenses are necessary to sell the property, or will likely result in a return greater than the expense being incurred.

(d) I (we) will receive the amount of principal paid off on the loan calculated at the promissory note interest rate.

(e) Any principal reduction attributed to subsidized interest calculations will be paid to the Government.

(f) I (we) will receive my original equity which is the difference between the market value of the security, as determined by the FmHA appraisal at the time the first loan subject to recapture of subsidy was made, and the amount of the FmHA loan(s) and any prior lien. This amount is -0- and represents -0- percent of the market value of the security. (The

7 When a FmHA RH loan is repaid by other than foreclosure, voluntary conveyance, or sale of property, the amount of subsidy to be repaid the Government will be determined in the same manner as described in paragraph 6 of this Exhibit but based on the appraised value determined by FmHA instead of sales price. In such cases, the subsidy due the Government will remain a lien on the property until paid. It must be paid upon non occupancy, sale, or transfer of title to the property.

8 I (we) have read and agree to the provisions of this agreement.

Marilyn A. Calangelo Borrower
MARILYN A. CALANGELO

_____________________ Co-Borrower

February 2, 1989
Date signed

Accepted and Agreed to
By Helene R. Katz (FmHA Official)
HELENE R. KATZ
County Supervisor (Title)

February 2, 1989
Date

oOo





USDA Rural Development
Committed to the future of rural communities

United States Department of Agriculture

Rural Development
Centralized Servicing Center
P.O. Box 66827
St. Louis, MO 63166
(800) 793-8861 (Voice)
(800) 438-1832 (TDD/TTY Hearing Impaired Only) or
(314) 206-2214 (FAX)

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

ESTATE OF MARILYN A CALANGELO
160 HOOD AVE
SIRACUSE NY 13208-1271

SUBJECT: NOTICE OF ACCELERATION OF YOUR MORTGAGE LOAN(S); DEMAND FOR PAYMENT OF THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR OPPORTUNITY TO HAVE A HEARING CONCERNING THIS ACTION

Dear ESTATE OF MARILYN A CALANGELO

PLEASE TAKE NOTEthat the entire indebtedness due on the promissory note(s) and/or assumption agreement(s) which evidence the loan(s) received by you from the United States of America, acting through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers Home Administration, is now declared immediately due and payable and demand is hereby made on you to pay this entire indebtedness. If payment in full is not made as demanded herein, the RHS intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness by foreclosure of its lien(s) on your house.

| Account Number(s) | Date of Instruments | Amount |
|---|---|---|
| 0005216869 | 02/02/89 | 46000.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instrument(s). The reason(s) for the acceleration of your indebtedness is (are) as follows:

**MONETARY DEFAULT**

The balance of the account is $ 27407.45 unpaid principal and $ 687.01 unpaid interest, as of 10/01/07, plus additional interest accruing at the rate of $ 7.1334 per day thereafter, plus additional advances to be made by the United States for the protection of its security, the interest accruing on any such advances, fees, or late charges, and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

WEEKS CLSG EB11 ______



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

March 10, 2008

**CERTIFIED MAIL**
**AND FIRST CLASS MAIL**

Anthony Calangelo
160 Hood Avenue
Syracuse, NY 13208

Re: **NOTICE OF INTENT TO FORECLOSE MORTGAGE**

Mortgaged Premises: 19 Maiden Lane, Livingston Manor, NY

Dear Mr. Calangelo:

I am the Assistant United States Attorney assigned to represent the Rural Housing Service of the United States Department of Agriculture ("USDA") with regard to collection on the above-referenced mortgage. I am writing you in your capacity as executor of the Estate of Marilyn A. Calangelo. You have breached the terms of the mortgage and promissory note by failing to make payments as required under the note. USDA has referred this matter to this Office for the purpose of instituting a suit to collect debts owed to the United States after administrative efforts have failed.

The purpose of this letter is to notify you that unless the mortgage is paid in full by April 11, 2008, or you make other satisfactory payment arrangements with this Office, we will be compelled to institute a suit against you in the United States District Court to foreclose the mortgage.

The amount required to satisfy the account, as of March 10, 2008, is $58,055.94. Interest continues to accrue on the principal balance at the rate of 9.5% annually. Your certified check or money order should be made payable to the Treasury of the United States and mailed to this Office by April 11, 2008.

Please contact me if you have any questions.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By: ______________________

JOSEPH CORDARO
Assistant United States Attorney
Tel.: (212) 637-2745
Fax: (212) 637-2686
joseph.cordaro@usdoj.gov

cc: Peter Calangelo
P.O. Box 229
Narrowsburg, NY 12764

Margaret Roberts
P.O. Box 1171
Livingston Manor, NY 12758

Kathy Simmons
P.O. Box 928
Livingston Manor, NY 12758

Ann Marie Cook
263 Rockland Road
Rosceo, NY 12776

USDA-FmHA
Form FmHA 1940-16
(Rev. 8/87)

# PROMISSORY NOTE

| TYPE OF LOAN | |
|---|---|
| SECTION 502 RH | |

| STATE NEW YORK |
|---|
| COUNTY SULLIVAN |
| CASE NO |

Date FEBRUARY 2, 19 89.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in LIBERTY, NEW YORK 12754,

THE PRINCIPAL SUM OF FORTY SIX THOUSAND AND 00/100-----------------------------------

DOLLARS ($ 46,000.00), plus INTEREST on the UNPAID PRINCIPAL of NINE AND ONE HALF PERCENT ( 9.5 %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

[X] I. Principal and Interest payments shall be deferred. The interest accrued to MAY 2, 19 89 shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in 393 regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $ 46,095.09 and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______ of each ______ beginning on ______, 19___, through ______, 19___, Principal and later accrued Interest shall be paid in ______ installments as indicated in the box below;

☐ III. Payments shall not be deferred. Principal and Interest shall be paid in ______ installments as indicated in the box below:

$ 383.00 on JUNE 2, 19 89, and

$ 383.00 thereafter on the 2ND of each MONTH until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and PAYABLE THIRTY THREE ( 33 ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

Marilyn A. Calangelo (SEAL)
MARILYN A. CALANGELO (BORROWER)

(SEAL)
(SPOUSE)

MAIDEN LANE

LIVINGSTON MANOR, N.Y. 12758

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 39,000.00 | 2-2-89 | (8) $ | | (15) $ | |
| (2) $ 7,000.00 | 5-2-89 | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 46,000.00 | |

☆ U.S. Government Printing Office: 1987—723-431/61518

Position 5

USDA-FmHA
Form FmHA 427-1 NY
(Rev. 6-85)

# REAL ESTATE MORTGAGE FOR NEW YORK

THIS MORTGAGE, is made and entered into by MARILYN A. CALANGELO CF 3312

residing in Sullivan County, whose post office address

is Livingston Manor, New York 12758

herein called "Borrower", and the United States of America, acting through Farmers Home Administration, United States Department of Agriculture, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note", which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| Feb. 2, 1989 | $46,000.00 | 9.5% | Feb. 2, 2022 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased after 3 years, as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 as amended, or any other statute administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

And the debt instruments executed at the time of loan closing constitutes an obligation on the part of the Government to disburse all funds at one time or in multiple advances, provided the funds are for purposes authorized by the Government at the time of loan closing. This obligatory commitment takes priority over any intervening liens or advances by other creditors regardless of the provisions of the State laws involved:

NOW, THEREFORE, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower hereby grants, bargains, sells, conveys, assigns, mortgages, and forever warrants unto the Government the following property, herein called "the Property" situated in the County of

Sullivan, State of New York.

LIBER 403 PAGE 276

Received of the mortgage named in the within instrument $............, being the amount of the tax imposed thereon and paid at the time of the recording thereof.
Special additional tax

$.................

Dated: FEB 09 1989.........

..............JOE RUSSELL.........
Recording Officer of Sull. Co.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.



LIBER 1403 PAGE 372

MAGNETIC NORTH
POINT OF BEGINNING
FORMERLY LANDS OF NEWMAN
D.L. 542 P. 210
N/F GREYNOLDS D.L. 1355 P. 144
IRON PIN
S. 56°-12' E 208.72'
TO ROCK AVENUE
TRAVELED WAY OF MAIDEN LANE
N. 37°-17' E. 153.18'
HIGHWAY BOUNDS LINE
UTILITY LINES
0.70 ACRE PARCEL
SEE D.L. 355 P. 233
D.L. 345 P. 178
NOW D.L. 1301 P. 174
UTILITY LINES
SHED
S 32°-37' W 103.00'
N/F SANTORO D.L. 1274 P. 185
FORMERLY LANDS OF SPRIGGS (D.L. 724 P. 109)
IRON PIN
N. 56°-06' W. 44.00'
HOUSE
GARAGE
IRON PIN
S. 32°-36' W. 50.00'
ROOF LINE IS ON PROPERTY LINE
DRIVEWAY
N. 56°-12' W. 177.20'
SHED REMAINS
IRON PIN
GALAGA TO BRESSLER D.L. 1004 P. 105
IRON PIN
FORMERLY LANDS OF SCHWARTZ
SEE D.L. 590 P. 242
N/F MOCZYDLOWSKA D.L. 1349 P. 503
BUILDING LINE - NO ENCROACHMENT
N/F PANAIOTOV D.L. 1299 P. 107
TRAVELED WAY OF PEARL STREET
TO MAIN STREET

TO: MARILYN
UNITED STAT
HOME ADMI
TITLE USA
CATSKILL ABS
THIS IS T
IS DRAW
OF THE
SURVEY W
AND UPDATE

Unauthorized alteration or a
this map is a violation of Sec
of the New York State Educa
Copies of this map not h
Embossed Seal of the Land
shall not be valid.
Guarantees or Certifications
transferable to additional i
or subsequent owners.

SURVEY MAP OF
LIVINGSTO
TOWN OF ROCK
SCALE: 1" = 30'

GEORGE
LICENSED L
LIVINGSTON

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and the default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, and (c) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, with interest to the date of sale, (d) inferior liens of record required by law to be so paid or duly approved and allowed by court order or otherwise, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(21) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Syracuse, New York 13210, and in the case of Borrower to the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

AND THAT, except to any extent that such construction conflicts with express provisions of this mortgage:

(23) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(24) This mortgage is also intended to be a financing statement within the meaning of Article 9 of the Uniform Commercial Code covering fixtures attached to the above-described real estate, now owned or hereafter required; and crops growing or to be grown on the above-described real estate.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ____________ day

of February 2, 19 89

In the presence of

______________________ [signature] (SEAL)
Marilyn A. Calangelo

______________________ ______________________ (SEAL)

ACKNOWLEDGMENT

STATE ~~OR TERRITORY~~ OF New York
COUNTY OF Sullivan } ss:

On the 2nd day of February, 19 89, before me, came

Marilyn A. Calangelo

to me known to be the individual(s) described in, and who executed the foregoing instrument, and acknowledged to me

that she executed the same for the purposes therein contained.

[signature]
Notary Public.

(SEAL)

My commission expires July 31, 1989

JACOB J. EPSTEIN
Notary Public, State of New York
Sullivan County Clerk's #341
Commission Exp. July 31, 1989

RECORD ENTERED 2-9-89
4:19 P.M. JOE PURCELL, CLERK

RECEIVED
1989 FEB -9 PM 4:19
SULLIVAN COUNTY CLERK

STATE OF NEW YORK
SULLIVAN COUNTY SS:
RECORDED ON THE 9 DAY
Feb. 19 89 AT 4:19
P. M IN LIBER 1403
Mtgs. AT PAGE 570

CF 3312

MARILYN A. CALANGELO
Mortgagor

and 17—

U.S.A. acting through
Farmers Home Administration
USDA
Mortgagee

**JACOB J. EPSTEIN**
ATTORNEY AND COUNSELOR AT LAW
P. O. DRAWER 477
MAIN STREET
JEFFERSONVILLE, NEW YORK 12743
TELEPHONE:
AREA CODE 914-482-5200

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Date of Note 2/2/89 Amount of Note $46,000.00 Date of mortgage 2/2/89

Date of Note _____ Amount of Note ______ Date of mortgage ______________

Type of assistance:
1. Interest credit /XX/
2. Homeownership Assistance Program /__/

Address of Property: Maiden Lane

Livingston Manor, N.Y. 12758

BORROWER: MARILYN A. CALANGELO

CO-BORROWER: --------------------

1 This agreement entered into pursuant to 7 CFR 1951-I, between the United States of America, acting through the Farmers Home Administration (FmHA) (herein called "the Government") pursuant to section 521 of Title V of the Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears above (herein sometimes referred to as "borrower"), supplements the note(s) from borrower to the Government as described above, and any promissory note(s) for loans made to borrower in the future by the Government. Such future notes, when executed, will be listed below the signature line of this Subsidy Repayment Agreement.

2 I (we) agree to the conditions set forth in this agreement for the repayment of the subsidy granted me (us) in the form of interest credits or Homeownership Assistance Program (HOAP) subsidy (hereinafter called "subsidy").

3 I (we) agree that the real property described in the mortgage(s) listed above is pledged as security for repayment of the subsidy received or to be received. I (we) agree that the subsidy is due and payable upon the transfer of title or non-occupancy of the property by me (us). I (we) understand that the real estate securing the loan(s) is the only security for the subsidy received. I (we) further understand that I (we) will not be required to repay any of the subsidy from other than the value (as determined by the Government) of the real estate, mortgaged by myself (ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

4 I (we) understand that so long as I (we) continue to own the property and occupy the dwelling as my (our) residence, I (we) may repay the principal and interest owed on the loan and defer repaying the subsidy amount until title to the property is conveyed or the dwelling is no longer occupied by me (us). If such a request is made, the amount of subsidy to be repaid will be determined when the principal and interest balance is paid. The mortgage securing the FmHA RH loan(s) will not be released of record until the total amount owed the Government has been repaid.

5 I (we) agree that Paragraph 6 of this agreement is null and void should the property described in the mortgage(s) be voluntarily conveyed to the Government or liquidated by foreclosure.

6 When the debt is satisfied by other than voluntary conveyance of the property to the Government or by foreclosure, I (we) agree that sale proceeds will be divided between the Government and me (us) in the following order:

(a) Unpaid balance of loans secured by a prior mortgage as well as real estate taxes and assessments levied against the property which are due will be paid.

(b) Unpaid principal and interest owed on FmHA RH loans for the property and advances made by FmHA which were not subsidy and are still due and payable will be paid to the Government.

(c) I (we) will receive from the sale proceeds actual expenses incurred by me (us) necessary to sell the property. These may include sales commissions or advertising cost, appraisal fees, legal and related costs such as deed preparation and transfer taxes. Expenses incurred by me (us) in preparing the property for sale are not allowed unless authorized by the Government prior to incurring such expenses. Such expenses will be authorized only when FmHA determines such expenses are necessary to sell the property, or will likely result in a return greater than the expense being incurred.

(d) I (we) will receive the amount of principal paid off on the loan calculated at the promissory note interest rate.

(e) Any principal reduction attributed to subsidized interest calculations will be paid to the Government.

(f) I (we) will receive my original equity which is the difference between the market value of the security, as determined by the FmHA appraisal at the time the first loan subject to recapture of subsidy was made, and the amount of the FmHA loan(s) and any prior lien. This amount is -0- and represents -0- percent of the market value of the security. (The

percent is determined by dividing my (our) original equity by the market value of the security when the loan was closed.) The dollar amounts and percent will be entered at the time this agreement is signed by me (us) and will be part of this agreement.

(g) The remaining balance, after the payments described in (a) thru (f) above have been paid is called value appreciation. The amount of value appreciation to be paid to the Government, in repayment or the subsidy granted, is the lesser of (1) the full amount of the subsidy or (2) an amount determined by multiplying the value appreciation by the appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 40 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h) I (we) will receive the amount of value appreciation less the amount paid the Government as determined in (g) above. I (we) will also receive an additional amount in proportion to my original equity by reducing the amount of value appreciation due to the Government by the percent of my (our) original equity as shown in (f) above.

(i) If I (we) am the recipient of HOAP, the amount of value appreciation to be recaptured will be calculated as if I (we) had paid 1 percent interest on the loan, unless the average interest rate paid by me (us) was greater than 1 percent. In such cases it will be determined based on the average interest rate paid by me (us).

(j) If this agreement is for a subsequent loan(s) only, the amount of repayment determined in (g) above will be reduced by the following percent:____________. This percent will be determined by dividing the amount of the loan(s) subject to recapture by the total outstanding RH debt. This percentage will be entered at the time I (we) sign this agreement.

(k) If this agreement is for more than one loan that is subject to recapture, the subsidy repayment computations will be based on the total subsidy granted on all loans.

7 When a FmHA RH loan is repaid by other than foreclosure, voluntary conveyance, or sale of property, the amount of subsidy to be repaid the Government will be determined in the same manner as described in paragraph 6 of this Exhibit but based on the appraised value determined by FmHA instead of sales price. In such cases, the subsidy due the Government will remain a lien on the property until paid. It must be paid upon non occupancy, sale, or transfer of title to the property.

8 I (we) have read and agree to the provisions of this agreement.

Marilyn A. Calangelo Borrower
MARILYN A. CALANGELO

_______________ Co-Borrower

February 2, 1989
Date signed

Accepted and Agreed to
By Helene R. Katz (FmHA Official)
HELENE R. KATZ
County Supervisor (Title)

February 2, 1989
Date

o0o

Previous Current Next FMP1CICS FMP1 FHEJZ EJZ FBST ET:0.625

**PAYOFF FUNDS POP-UP** 650 4/25/2008 8:53:32 AM ETPFSP576 3 4

Funds Detail Panel

| Funds Due For Account [redacted]6869 | | Escrow/Impound Required |
|---|---|---|
| Principal | 11010.04 | |
| Int 06/29/07 To 04/25/08 | 876.16 | |
| SUBSIDY TO BE RECAPTURED | 41393.32 | |
| Escrow/Impound Required | 0.00 | |
| FHA PREMIUM DUE HUD | 0.00 | |
| Optional Insurance | 0.00 | |
| Late Charges Due | 0.00 | |
| P&I Advance | 0.00 | |
| Deferred Amounts | 0.00 | |
| Fees Assessed W/Payoff Quote | 0.00 | Interest Calculations |
| Fees Required W/Payoff Funds | 275.06 | Rate From To Int Due |
| Fees Currently Assessed | 4689.33 | 9.500 06/29/07 04/25/08 859.69 |
| Funds To Be Credited | | UNCOLLECTED INTEREST 16.47 |
| Less Escrow/Impound Funds | 0.00 | |
| Less Unapplied Funds | 0.00 | |
| Payoff Funds Required | 58243.91 | |
| Funds Retained | | After 04/25/08 ADD PERDIEM 2.8656 |
| Escrow/Impound Funds | 0.00 | AND RECOV/COST INT PERDIEM 1.2205 |
| Unapplied Funds | 0.00 | Quote Expires 04/25/08 |

Message: CLICK RETURN TO EXIT OK

Command: Submit Reset PrintAll

USDA Rural Development
Committed to the future of rural communities

United States Department of Agriculture

Rural Development
Centralized Servicing Center
P.O. Box 66827
St. Louis, MO 63166
(800) 793-8861 (Voice)
(800) 438-1832 (TDD/TTY Hearing Impaired Only) or
(314) 206-2214 (FAX)

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

ESTATE OF MARILYN A CALANGELO
160 HOOD AVE
SIRACUSE NY 13208-1271

SUBJECT: NOTICE OF ACCELERATION OF YOUR MORTGAGE LOAN(S); DEMAND FOR PAYMENT OF THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR OPPORTUNITY TO HAVE A HEARING CONCERNING THIS ACTION

Dear ESTATE OF MARILYN A CALANGELO

PLEASE TAKE NOTEthat the entire indebtedness due on the promissory note(s) and/or assumption agreement(s) which evidence the loan(s) received by you from the United States of America, acting through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers Home Administration, is now declared immediately due and payable and demand is hereby made on you to pay this entire indebtedness. If payment in full is not made as demanded herein, the RHS intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness by foreclosure of its lien(s) on your house.

| Account Number(s) | Date of Instruments | Amount |
|---|---|---|
| 0005216869 | 02/02/89 | 46000.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instrument(s). The reason(s) for the acceleration of your indebtedness is (are) as follows:

**MONETARY DEFAULT**

The balance of the account is $ 27407.45 unpaid principal and $ 687.01 unpaid interest, as of 10/01/07, plus additional interest accruing at the rate of $ 7.1334 per day thereafter, plus additional advances to be made by the United States for the protection of its security, the interest accruing on any such advances, fees, or late charges, and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

Web: http://www.rurdev.usda.gov
"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430), Washington, DC 20250-9410 or call (866) 632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202) 720-8046 (FAX)



Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. **Payment should be made by cashier's check, certified check, or postal money orders payable to the USDA/RD and mailed to the following address:**

USDA-Rural Development
P.O. Box 790170
St. Louis, MO 63179-0170

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than 10/16/07 . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING** - If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s); (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.

You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract). You cannot be denied a loan because all or a part of your income is from a public assistance program. If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act. The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Default Management toll free at 1-800-793-8861 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time. Please refer to your Account number when you write or call us. Thank you.

UNITED STATES OF AMERICA
BY

Thomas B. Herron
Branch Chief
CSC - Chief, Default Management Branch,
Rural Development
United States Department of Agriculture

Date: 10/01/07
Attachment
CC: State Office

This letter was mailed certified and regular mail on 10/01/07 .

*FX000001204* L9051SSP