MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: JOSEPH N. CORDARO
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2745
Facsimile:  (212) 637-2686
Email: joseph.cordaro@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :    ECF CASE
UNITED STATES OF AMERICA,           :
                                    :    AMENDED
                Plaintiff,          :    COMPLAINT
                                    :
        v.                          :    08 Civ. 3947 (CLB)
                                    :
ESTATE OF MARILYN A. CALANGELO,     :
ANTHONY CALANGELO, PETER            :
CALANGELO, MARGARET ROBERTS,        :
KATHY SIMMONS, ANN MARIE COOK,      :
CATSKILL REGIONAL MEDICAL CENTER,   :
JOHN DOES NOS. 1-10 and             :
JANE DOES NOS. 1-10,                :
                                    :
                Defendants.         :
                                    :
- - - - - - - - - - - - - - - - - -x

        Plaintiff, United States of America ("the United

States" or "the Government"), by and through its attorney,

Michael J. Garcia, United States Attorney for the Southern

District of New York, for its amended complaint herein alleges

upon information and belief as follows:

                        <u>INTRODUCTION</u>

        1.  This is an action brought by the United States to

foreclose a mortgage on property located in the Hamlet of

Livingston Manor, Town of Rockland, County of Sullivan and State of New York, within the Southern District of New York.

2.  This action was originally commenced by the filing of a complaint with this court on April 28, 2008, which was entered on the docket on April 30, 2008.

<u>JURISDICTION AND VENUE</u>

3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345.

4.  Venue is proper pursuant to 28 U.S.C. § 1391(b), in that the property is located within the Southern District of New York.

<u>THE PARTIES</u>

5.  The Rural Housing Service ("RHS") is an agency of the United States.

6.  The Estate of Marilyn A. Calangelo ("the Estate of Calangelo") is the successor in interest to Marilyn A. Calangelo ("Borrower") who, prior to her death, resided at 19 Maiden Lane, Livingston Manor, New York (the "premises" or the "Mortgaged Property").

7.  Anthony Calangelo, Peter Calangelo, Margaret Roberts, Kathy Simmons and Ann Marie Cook are the children of the Borrower and are named as defendants herein because they may have an interest in any assets of the Estate of Calangelo.

8.    Defendant Catskill Regional Medical Center is named as a defendant herein because it is mentioned in the application for letters testamentary as having a claim against the Estate of Marilyn A. Calangelo.

9.    John Does Nos. 1-10 and Jane Does Nos. 1-10 may be persons or parties in possession of the premises, or having or claiming an interest in or lien on the premises.

<u>FACTS AND CLAIMS OF RELIEF</u>

10.    On or about February 2, 1989, Borrower executed and delivered a secured promissory note to RHS in the principal amount of $46,000.00, plus interest at the rate of 9.5% annually ("the Note").  A true and correct copy of the Note is attached hereto as Exhibit A.

11.    On February 2, 1989, to secure payment of the Note, Borrower also executed and delivered a Real Estate Mortgage ("the Mortgage") with the Note in favor of RHS covering the Mortgaged Property, described therein.  The Mortgage was recorded on February 9, 1989, in the Sullivan County Clerk's Office, in Liber No. 1403 of Mortgages at Page 570.  A true copy of the Mortgage is attached hereto as Exhibit B.

12.    The Mortgage and the Note require Borrower to pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the Mortgaged Property, and to keep the Mortgaged Property insured.

The Mortgage further provides that in the event of a default in making such payments, the Government is authorized to make such payments as advances for the account. Pursuant to the terms of the Mortgage, such advances together with the interest thereon are immediately due and payable by Borrower to the Government, without demand, and are secured by the Mortgage.

13. On February 2, 1989, RHS and Borrower entered into a Subsidy Repayment Agreement (the "Subsidy Repayment Agreement"). Pursuant to 42 U.S.C. § 1490a and the terms of the Mortgage, any interest credit assistance is subject to recapture upon disposition of the property. The amount subject to recapture is $41,393.32. A true and correct copy of the Subsidy Repayment Agreement is attached hereto as Exhibit C. A true and correct copy of the USDA Payoff Funds Pop-Up computer screen for Borrower's account, reflecting the amount subject to recapture, is attached hereto as Exhibit D.

14. On or about October 1, 2007, a notice of default and demand letter was sent to the Estate of Marilyn A. Calangelo. In that letter, RHS advised the Estate of Marilyn A. Calangelo that due to the continued failure to make the required mortgage payments, and in accordance with the terms of the Mortgage and Note, the indebtedness due on the Note was accelerated and deemed to be immediately due and payable. A true and correct copy of the October 1, 2007 letter is annexed hereto as Exhibit E.

4

15. By letter dated March 10, 2008, which was sent by certified mail, return receipt requested, and by first class mail, the United States informed Anthony Calangelo as executor of the Estate of Marilyn Calangelo that the Estate of Marilyn A. Calangelo was in default on the Mortgage. This letter advised the Estate of Marilyn Calangelo that the Mortgage would be foreclosed if satisfactory payment was not received by April 11, 2008. A true and correct copy of the March 10, 2008 letter is annexed hereto as Exhibit F.

16. Despite the demands for payment, Borrower and the Estate of Marilyn Calangelo failed to make the installment payments required by the Note and the Mortgage, or otherwise make payments sufficient to render the loan current. On account of Borrower and the Estate of Marilyn Calangelo's default, the entire outstanding balance of principal and interest is now due.

17. The Borrower and the Estate of Marilyn Calangelo further failed to make the necessary tax and/or insurance payments on the Mortgaged Property, thereby requiring the United States to advance such payments to protect its interest.

18. As of April 25, 2008, the Estate of Marilyn Calangelo was justly indebted to the United States on the Note for the principal amount of $11,010.04, plus accrued interest on the principal in the amount of $876.16, plus subsidies in the amount of $41,393.32, plus advances of $4,689.33, plus accrued

interest on the advances in the amount of $275.06.  The total amount of the debt as of April 25, 2008 was $58,243.91.  Interest continues to accrue on the principal balance at the rate of 9.5% annually.  The daily per diem for interest is $2.8656 on the principal plus $1.2205 on the advances for a total daily per diem of $4.0861.

19.  In order to protect its security interest, the United States may be compelled, during the pendency of this action, to pay taxes, assessments, water or sewer rates, water charges, insurance premiums, and any other charges affecting the premises.  Plaintiff requests that any sums so paid be added to the sum otherwise due, be deemed secured by the Mortgage, and adjudged a valid lien on the premises herein described.

20.  No other action has been commenced at law or otherwise for the recovery of the sum, or any part thereof, secured by the Note and Mortgage.

WHEREFORE, plaintiff, United States of America, respectfully requests that the Court:

(a) enter judgment holding the Estate of Marilyn A. Calangelo in default on the Note, the Mortgage and the Subsidy Repayment Agreement;

(b)  adjudicate the amount due plaintiff on the Note, the Mortgage and the Subsidy Repayment Agreement;

6

(c) enter judgment ordering that the named defendants, and all other persons whose claims are subsequent to or recorded after the filing of notice of pendency of this action in the office of the Clerk of Sullivan County in the State of New York, be forever barred and foreclosed from all right, title, claim, lien or other interest in the Mortgaged Property;

(d)  enter an order directing the foreclosure and sale of the Mortgaged Property with the proceeds to be first applied to pay the liens of taxing authorities entitled to priority, if any, and thereafter to amounts due plaintiff under the Note and Mortgage, with interest to the date of payment, plus costs and disbursements of this action; and

(e) order such further relief as the Court may deem just.


Dated:    New York, New York
          July 11, 2008


                    MICHAEL J. GARCIA
                    United States Attorney for the
                    Southern District of New York
                    Attorney for the United States
                    of America


          By: _____
              JOSEPH N. CORDARO
              Assistant United States Attorney
              86 Chambers Street, 3rd Floor
              New York, New York  10007
              Telephone: (212) 637-2745
              Facsimile: (212) 637-2686
              Email: joseph.cordaro@usdoj.gov

                         7

USDA-FmHA
Form FmHA 1940-16
(Rev. 8/87)

**PROMISSORY NOTE**

| TYPE OF LOAN | |
|---|---|
| SECTION 502 RH | |

| STATE | NEW YORK |
|---|---|
| COUNTY | SULLIVAN |
| CASE NO | . . . . . |

Date _____ **FEBRUARY 2** _____ , 19 **89** .

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in _____ _____

_____ **LIBERTY, NEW YORK 12754** _____ ,

THE PRINCIPAL SUM OF **FORTY SIX THOUSAND AND 00/100------------------------------------**

DOLLARS ($ **46,000.00** _____ _____), plus **INTEREST** on the **UNPAID PRINCIPAL** of

**NINE AND ONE HALF** _____ **PERCENT** ( **9.5** %) **PER ANNUM**.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

[X] I.    Principal and Interest payments shall be deferred. The interest accrued to **MAY 2** _____ , 19 **89**

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in **393** _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $ **46,095.09** _____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.    Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each __ _____ beginning on _____ , 19____ , through _____ , 19__ __ ,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☐ III.    Payments shall not be deferred. Principal and Interest shall be paid in _____ installments as indicated in the box below:

$ __ **383.00** _____ on _____ **JUNE 2** _____ , 19 **89** , and

$ _ **383.00** _____ thereafter on the **2ND** _____ of each **MONTH** _____
until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness

evidenced hereby, if not sooner paid, shall be due and PAYABLE **THIRTY THREE** ____ ( **33** _____ ) **YEARS**
from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

MARILYN A. CALANGELO     (BORROWER)     (SEAL)

_____     (SEAL)
                    (SPOUSE)

MAIDEN LANE _____

LIVINGSTON MANOR, N.Y. 12758 _____

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $39,000.00 | 2-2-89 | (8) $ | | (15) $ | |
| (2) $ 7,000.00 | 5-2-89 | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 46,000.00 | |

☆ U.S. Government Printing Office: 1987—723-431/61518

*Position 2*

FmHA 1940-16 (Rev. 8/87)

*Position 5*

**USDA-FmHA**
Form FmHA 427-1 NY
(Rev. 6-85)

~~ ~ ~

## REAL ESTATE MORTGAGE FOR NEW YORK

THIS MORTGAGE, is made and entered into by ___MARILYN A. CALANGELO___      CF 3312

residing in _____ Sullivan _____ County , whose post office address

is _____ Livingston Manor, New York   12758 _____

herein called "Borrower", and the United States of America, acting through Farmers Home Administration, United States Department of Agriculture, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note", which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| Feb. 2, 1989 | $46,000.00 | 9.5% | Feb. 2, 2022 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased after 3 years, as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 as amended, or any other statute administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

And the debt instruments executed at the time of loan closing constitutes an obligation on the part of the Government to disburse all funds at one time or in multiple advances, provided the funds are for purposes authorized by the Government at the time of loan closing. This obligatory commitment takes priority over any intervening liens or advances by other creditors regardless of the provisions of the State laws involved:

NOW, THEREFORE, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower hereby grants, bargains, sells, conveys, assigns, mortgages, and forever warrants unto the Government the following property, herein called "the Property" situated in the County of

_____ Sullivan _____ , State of New York.

нсеетved of the mortgage
named in the within instru-
ment: $............, being the amount
of the tax imposed thereon
and paid at the time of the
recording thereof.
Special additional tax

$................

Dated: FEB·0·9·1989.........

.............JOE. PINFKI............
Recording Officer of Rnll. Co.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns COVENANTS AND AGREES as follows:

(1)    To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)    To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)    If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)    Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.



SURVEY MAP OF
LIVINGSTO
TOWN OF ROCK
SCALE: 1"=30'

GEORGE
LICENSED L
LIVINGSTON

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and the default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, and (c) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, with interest to the date of sale, (d) inferior liens of record required by law to be so paid or duly approved and allowed by court order or otherwise, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(21) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Syracuse, New York 13210, and in the case of Borrower to the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

AND THAT, except to any extent that such construction conflicts with express provisions of this mortgage:

(23) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(24) This mortgage is also intended to be a financing statement within the meaning of Article 9 of the Uniform Commercial Code covering fixtures attached to the above-described real estate, now owned or hereafter required; and crops growing or to be grown on the above-described real estate.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this _____ day

of _____February     2_____ , 19 _89_

In the presence of

_____     _Marilyn A. Calangelo_ (SEAL)

_____     _____ (SEAL)

## ACKNOWLEDGMENT

STATE OR TERRITORY OF _____New York_____ }
                                                  } ss:
COUNTY OF _____Sullivan_____ }

On the ____2nd____ day of ____February____ , 19 _89_ , before me, came

_____Marilyn A. Calangelo_____

to me known to be the individual(s) described in, and who executed the foregoing instrument, and acknowledged to me

that ____she____ executed the same for the purposes therein contained.

(SEAL)

*Notary Public.*

My commission expires ____July 31, 1989____

JACOB J. EPSTEIN
Notary Public, State of New York
Sullivan County, No. ...
Commission Expires July 31, 1989

RECORD ENTERED 2-9-89
4:19 P.M. JOE PURCELL, CLERK

RECEIVED

1983 FEB -9 PM 4: 10

SULLIVAN COUNTY CLERK

...Y OF NEW YORK
...LIVAN COUNTY ss
...CORDED ON THE 9
...Feb. 19 83 AT 4:49
...P M IN LIBER 1403
Mtg. AT P... 570 DAY

CF 3312

MARILYN A. CALANGELO
                    Mortgagor

and

U.S.A. acting through
Farmers Home Administration
USDA
                    Mortgagee

JACOB J. EPSTEIN
ATTORNEY AND COUNSELOR AT LAW
P. O. DRAWER 477
MAIN STREET
JEFFERSONVILLE, NEW YORK 12748
TELEPHONE:
AREA CODE 914—482-5200

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Date of Note  2/2/89   Amount of Note $46,000.00 Date of mortgage  2/2/89

Date of Note _____   Amount of Note _____   Date of mortgage _____

Type of assistance:                         1. Interest credit  /xx/
                                            2. Homeownership Assistance
                                               Program  /  /

Address of Property:  Maiden Lane

                      Livingston Manor, N.Y. 12758


BORROWER:   MARILYN A. CALANGELO

CO-BORROWER:   --------------------


1    This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, acting through the Farmers Home Administration (FmHA)
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3    I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received.  I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us).  I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received.  I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.


(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property
and occupy the dwelling as my (our) residence, I (we) may repay the principal
and interest owed on the loan and defer repaying the subsidy amount until
title to the property is conveyed or the dwelling is no longer occupied by
me (us).  If such a request is made, the amount of subsidy to be repaid
will be determined when the principal and interest balance is paid.  The
mortgage securing the FmHA RH loan(s) will not be released of record until
the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and
void should the property described in the mortgage(s) be voluntarily
conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the
property to the Government or by foreclosure, I (we) agree that sale
proceeds will be divided between the Government and me (us) in the
following order:

   (a)  Unpaid balance of loans secured by a prior mortgage as well as
   real estate taxes and assessments levied against the property which
   are due will be paid.

   (b)  Unpaid principal and interest owed on FmHA RH loans for the
   property and advances made by FmHA which were not subsidy and are
   still due and payable will be paid to the Government.

   (c)  I (we) will receive from the sale proceeds actual expenses
   incurred by me (us) necessary to sell the property.  These may include
   sales commissions or advertising cost, appraisal fees, legal and
   related costs such as deed preparation and transfer taxes.  Expenses
   incurred by me (us) in preparing the property for sale are not allowed
   unless authorized by the Government prior to incurring such expenses.
   Such expenses will be authorized only when FmHA determines such expenses
   are necessary to sell the property, or will likely result in a return
   greater than the expense being incurred.

   (d)  I (we) will receive the amount of principal paid off on the
   loan calculated at the promissory note interest rate.

   (e)  Any principal reduction attributed to subsidized interest
   calculations will be paid to the Government.

   (f)  I (we) will receive my original equity which is the difference
   between the market value of the security, as determined by the
   FmHA appraisal at the time the first loan subject to recapture of
   subsidy was made, and the amount of the FmHA loan(s) and any
   prior lien.  This amount is    -0-        and represents
        -0-      percent of the market value of the security.  (The

FmHA Instruction 1951-I
Exhibit A
Page 3

percent is determined by dividing my (our) original equity by
the market value of the security when the loan was closed.) The
dollar amounts and percent will be entered at the time this agreement
is signed by me (us) and will be part of this agreement.

(g) The remaining balance, after the payments described in (a) thru (f)
above have been paid is called value appreciation. The amount of
value appreciation to be paid to the Government, in repayment or
the subsidy granted, is the lesser of (1) the full amount of the subsidy or
(2) an amount determined by multiplying the value appreciation by the
appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 40 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h) I (we) will receive the amount of value appreciation less the
amount paid the Government as determined in (g) above. I (we) will
also receive an additional amount in proportion to my original equity
by reducing the amount of value appreciation due to the Government by
the percent of my (our) original equity as shown in (f) above.

(i) If I (we) am the recipient of HOAP, the amount of value appreciation
to be recaptured will be calculated as if I (we) had paid 1 percent
interest on the loan, unless the average interest rate paid by me (us)
was greater than 1 percent. In such cases it will be determined based
on the average interest rate paid by me (us).

(j) If this agreement is for a subsequent loan(s) only, the amount
of repayment determined in (g) above will be reduced by the following
percent: _____. This percent will be determined by dividing the
amount of the loan(s) subject to recapture by the total outstanding
RH debt. This percentage will be entered at the time I (we) sign this
agreement.

(k) If this agreement is for more than one loan that is subject to
recapture, the subsidy repayment computations will be based on the total
subsidy granted on all loans.

(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4


7    When a FmHA RH loan is repaid by other than foreclosure, voluntary
conveyance, or sale of property, the amount of subsidy to be repaid the
Government will be determined in the same manner as described in paragraph
6 of this Exhibit but based on the appraised value determined by FmHA
instead of sales price.  In such cases, the subsidy due the Government
will remain a lien on the property until paid.  It must be paid upon non
occupancy, sale, or transfer of title to the property.

8    I (we) have read and agree to the provisions of this agreement.


_____ Borrower
MARILYN A. CALANGELO

_____ Co-Borrower

February 2, 1989
        Date signed


Accepted and Agreed to
By_____  (FmHA Official)
    HELENE R. KATZ
    County Supervisor            (Title)

    February 2, 1989
        Date


oOo

Previous   Current   Next

**PAYOFF FUNDS POP-UP**          FMP1CICS FMP1 FHEJZ      EJZ FBST    ET:0.625
                                 650 4/25/2008  8:53:32 AM ETPFSP576              3 4

```
+ - - - - - - - - - - - - - - - - - - - - - -Funds Detail  Panel - - - - - - - - - - - - - - - - - - - - - +
| - - Funds Due For Account     ▮▮▮869 - - - -  - - - - - Escrow/Impound  Required  - - - - - - |
|Principal                   11010.04                                                           |
|Int  06/29/07  To 04/25/08    876.16                                                           |
| SUBSIDY TO BE RECAPTURED    41393.32                                                          |
|Escrow/Impound   Required       0.00                                                           |
| FHA PREMIUM DUE HUD            0.00                                                            |
|Optional   Insurance           0.00                                                            |
|Late  Charges  Due             0.00                                                            |
|P&I  Advance                   0.00       =====================================|
|Deferred   Amounts             0.00                                                            |
|Fees  Assessed  W/Payoff  Quote  0.00     - - - - - Interest   Calculations  - - - - - - |
|Fees  Required  W/Payoff  Funds  275.06   Rate   From     To      Int  Due  |
|Fees  Currently  Assessed     4689.33    9.500 06/29/07 04/25/08    859.69  |
| - - - - - Funds To Be Credited  - - - - - - - - - -  UNCOLLECTED INTEREST     16.47  |
|Less  Escrow/Impound  Funds     0.00                                                           |
|Less  Unapplied  Funds          0.00                                                           |
|Payoff   Funds Required      58243.91     =====================================|
| - - - - - - - - - Funds  Retained  - - - - - - - - -  After  04/25/08  ADD PERDIEM   2.8656 |
|Escrow/Impound   Funds          0.00     AND RECOV/COST INT PERDIEM   1.2205 |
|Unapplied   Funds               0.00     Quote Expires   04/25/08              |
+ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - +
```

Message:   CLICK RETURN TO EXIT                          OK

Command:                                                          [ Submit ]  [ Reset ]  [ PrintAll ]



**United States
Department of
Agriculture**

*Committed to the future of rural communities*

*Rural Development*

Centralized Servicing Center
P.O. Box 66827
St. Louis, MO 63166
*(800) 793-8861 (Voice)*
*(800) 438-1832 (TDD/TTY Hearing Impaired Only) or*
*(314) 206-2214 (FAX)*

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

ESTATE OF MARILYN A CALANGELO
160 HOOD AVE
SIRACUSE             NY 13208-1271

SUBJECT:  NOTICE OF ACCELERATION OF YOUR MORTGAGE LOAN(S); DEMAND FOR PAYMENT OF
THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR OPPORTUNITY
TO HAVE A HEARING CONCERNING THIS ACTION

Dear   ESTATE OF MARILYN A CALANGELO

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption
agreement(s) which evidence the loan(s) received by you from the United States of America, acting
through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers
Home Administration, is now declared immediately due and payable and demand is hereby made on
you to pay this entire indebtedness. If payment in full is not made as demanded herein, the RHS
intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness
by foreclosure of its lien(s) on your house.

| Account Number(s) | Date of Instruments | Amount |
|---|---|---|
| 0005216869 | 02/02/89 | 46000.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the
above-described instrument(s). The reason(s) for the acceleration of your indebtedness is (are)
as follows:

**MONETARY DEFAULT**

The balance of the account is $  27407.45        unpaid principal and
$ 687.01          unpaid interest, as of  10/01/07, plus additional interest accruing at the rate
of $ 7.1334          per day thereafter, plus additional advances to be made by the United States
for the protection of its security, the interest accruing on any such advances, fees, or late charges,
and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

Web: http://www.rurdev.usda.gov
"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430),
Washington, DC 20250-9410 or call (866) 632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202) 720-8046 (FAX)

*FX000001202* L9051SSP



Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. **Payment should be made by cashier's check, certified check, or postal money orders payable to the USDA/RD and mailed to the following address:**

> USDA-Rural Development
> P.O. Box 790170
> St. Louis, MO 63179-0170

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than    10/16/07  . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING** - If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s); (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.

You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract). You cannot be denied a loan because all or a part of your income is from a public assistance program. If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act. The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Default Management toll free at 1-800-793-8861 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time. Please refer to your Account number when you write or call us. Thank you.

UNITED STATES OF AMERICA

BY

Thomas B. Herron
Branch Chief
CSC - Chief, Default Management Branch,
Rural Development
United States Department of Agriculture

Date:    10/01/07
Attachment
CC:    State Office

This letter was mailed certified and regular mail on    10/01/07 .

**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

March 10, 2008

CERTIFIED MAIL
AND FIRST CLASS MAIL

Anthony Calangelo
160 Hood Avenue
Syracuse, NY 13208

Re: **NOTICE OF INTENT TO FORECLOSE MORTGAGE**

     Mortgaged Premises: 19 Maiden Lane, Livingston Manor, NY

Dear Mr. Calangelo:

     I am the Assistant United States Attorney assigned to represent the Rural Housing Service of the United States Department of Agriculture ("USDA") with regard to collection on the above-referenced mortgage. I am writing you in your capacity as executor of the Estate of Marilyn A. Calangelo. You have breached the terms of the mortgage and promissory note by failing to make payments as required under the note. USDA has referred this matter to this Office for the purpose of instituting a suit to collect debts owed to the United States after administrative efforts have failed.

     The purpose of this letter is to notify you that unless the mortgage is paid in full by April 11, 2008, or you make other satisfactory payment arrangements with this Office, we will be compelled to institute a suit against you in the United States District Court to foreclose the mortgage.

     The amount required to satisfy the account, as of March 10, 2008, is $58,055.94. Interest continues to accrue on the principal balance at the rate of 9.5% annually. Your certified check or money order should be made payable to the Treasury of the United States and mailed to this Office by April 11, 2008.

Please contact me if you have any questions.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By: _____
JOSEPH CORDARO
Assistant United States Attorney
Tel.:  (212) 637-2745
Fax:   (212) 637-2686
joseph.cordaro@usdoj.gov


cc:  Peter Calangelo
     P.O. Box 229
     Narrowsburg, NY 12764

     Margaret Roberts
     P.O. Box 1171
     Livingston Manor, NY 12758

     Kathy Simmons
     P.O. Box 928
     Livingston Manor, NY 12758

     Ann Marie Cook
     263 Rockland Road
     Rosceo, NY 12776